1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10
11
12
13
14
15
16
17

WILLIE J. SMITH, JR.,                )
                                     )
              Petitioner,            )          2:08-cv-1552-GMN-VCF
                                     )
vs.                                  )          **ORDER**
                                     )
BRIAN WILLIAMS, *et al.*,            )
                                     )
              Respondents.           )
_____/

18          This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254,

19   by a Nevada state prisoner.  This matter comes before the Court on the merits of the petition.

20   **I. Background and Procedural History**

21          A complaint was filed in Clark County Justice Court on October 13, 2000, charging

22   petitioner with one count of trafficking a controlled substance.  (Exhibit 1).[1]  A preliminary hearing

23   was held on February 27, 2001, at which petitioner was ordered to stand trial on the charge.  (Exhibit

24   2).  An information was filed on March 13, 2001.  (Exhibit 3).  Petitioner entered a plea of not guilty

25

26          _____

          [1]  The exhibits referenced in this order are found in the Court's record at ECF No. 22.

on March 13, 2001.  (Exhibit 4).  A pretrial hearing was held on April 21, 2001.  (Exhibit 5).  The issue of a possible Fourth Amendment violation was raised and a briefing schedule was set.

Petitioner filed a motion to suppress on October 12, 2001.  (Exhibit 6).  At a hearing on November 8, 2001, the state district court denied the motion, and a written order was filed November 14, 2001.  (Exhibit 9).

From November 2001 and May 2002, petitioner dismissed his prior counsel, and was appointed new counsel.  (Exhibits 10-19).  On July 12, 2002, the State filed a motion to file an amended information, which would include habitual criminal language based on five prior felonies. (Exhibit 20).  The court granted the motion on September 3, 2002.  (Exhibit 21).  An amended information was filed the same day.  (Exhibit 22).

On August 1, 2002, petitioner filed a motion to dismiss his newly appointed counsel. (Exhibit 23).  The court held several hearings regarding petitioner's issues with counsel and his case. (Exhibits 24-31).  On January 21, 2003, the court canvassed petitioner regarding his desire to represent himself.  (Exhibit 32).  As a result of the hearing, petitioner was allowed to represent himself, with trial counsel then serving as standby counsel for petitioner.

Petitioner moved to disqualify the judge on grounds of personal bias.  (Exhibit 33).  After hearings, the motion to disqualify the judge was denied.  (Exhibits 35-39).

Petitioner filed several motions with the court, including a motion to suppress.  (Exhibits 40-48).  On March 26, 2003, petitioner filed a mandamus petition with the Nevada Supreme Court regarding the Fourth Amendment issue.  (Exhibit 49).  The Nevada Supreme Court declined to consider the petition.  (Exhibit 50).

In the next year, petitioner filed many pretrial motions, including motions repeating the Fourth Amendment issue and motions requesting disqualification of the trial court judge.  (Exhibits 51-104).

2

1    A second amended information was filed on April 13, 2004.  (Exhibit 105).  A jury trial

2 began, with jury selection held on April 13, 2004.  (Exhibit 106).  Trial testimony was taken on April

3 14, 2004.  (Exhibit 107).  Closing argument was made on April 15, 2004.  (Exhibit 108).  Jury

4 instructions were made part of the record.  (Exhibit 109).  On April 15, 2004, the jury returned its

5 verdict and found petitioner guilty.  (Exhibit 110).  The Court heard several post-trial motions by

6 petitioner, all of which were denied.  (Exhibits 111-119).  Petitioner was sentenced on August 3,

7 2004.  (Exhibit 120).  Judgments of conviction were filed on August 12, 2005, and March 25, 2005.

8 (Exhibits 121, 122).  Petitioner was sentenced to 72 to 180 months in state prison.  (*Id.*).  Petitioner

9 filed a timely notice of appeal.  (Exhibit 123).

10    Petitioner was not allowed to represent himself on direct appeal.  A newly appointed counsel

11 filed an opening brief on his behalf on September 28, 2005.  (Exhibit 124).  An amended brief was

12 filed October 11, 2005.  (Exhibit 125).  The answering brief was filed October 26, 2005.  (Exhibit

13 126).  On March 14, 2006, petitioner filed a motion to "reopen" his direct appeal due to ineffective

14 assistance of counsel.  (Exhibit 127).  The Nevada Supreme Court declined relief and advised

15 petitioner to raise ineffective assistance claims in a post-conviction petition.  (Exhibit 128).  On May

16 2, 2006, the Nevada Supreme Court affirmed the conviction.  (Exhibit 129).

17    On August 23, 2006, petitioner filed his post-conviction habeas petition and memorandum in

18 the state district court.  (Exhibit 130 and 131).  The district court entered findings of fact and

19 conclusions of law, denying the petition.  (Exhibit 135).  Petitioner filed a timely notice of appeal.

20 (Exhibit 136).  On September 25, 2008, the Nevada Supreme Court issued its order of affirmance

21 and denied all claims for relief.  (Exhibit 137).

22    This Court received the federal petition on November 12, 2008.  (ECF No. 1).  On November

23 26, 2008, the Court dismissed the petition as successive and submitted outside the applicable

24 limitations period.  (ECF No. 2).  Judgment was entered on the same date.  (ECF No. 3).

25

26

On December 30, 2008, petitioner filed a motion for reconsideration.  (ECF No. 5).  On January 14, 2009, petitioner filed a motion to reopen his case.  (ECF No. 6).  By order filed April 21, 2009, this Court granted petitioner's motion for reconsideration, noting that petitioner has multiple convictions and multiple habeas petitions in this Court.  (ECF No. 11).  In the order of April 21, 2009, the Court expressed no opinion as to whether procedural defenses might apply to the petition. (*Id.*).  The respondents were directed to respond to the petition, in particular, to Part I of the petition, at pp. 1-2, and Part 2 of the petition, at pp. 1-87.[2]  (*Id.*).

The federal habeas petition raises 30 grounds, as follows: (1) the trial court lacked jurisdiction; (2) lack of probable cause; (3) insufficient evidence; (4) "procedural default"; (5) Fourth Amendment issue; (6) *Brady* violation; (7) *Batson* violation; (8) Fourth Amendment; (9) motion for new trial; (10) use of perjury; (11) *Miranda* violation; (12) chain of custody; (13) confrontation issue; (14) trial counsel's failure to investigate; (15) standby counsel was ineffective; (16) appellate counsel was ineffective (containing 33 subparts); (17) prosecutorial misconduct; (18) prosecutorial misconduct; (19) prosecutorial misconduct; (20) abuse of discretion; (21) jury instructions; (22) judicial bias; (23) judicial bias; (24) judicial bias; (25) incomplete records; (26) sentencing errors; (27) cumulative error; (28) inadequate appellate review; (29) conspiracy; and (30) inadequate appellate review.  (Petition, at ECF No. 12).

Respondents filed a motion to dismiss the petition.  (ECF No. 22).  By order filed February 25, 2010, this Court entered an order, finding the following: (1) Grounds 3, 9, 10, 11, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 29 of the federal habeas petition were dismissed as procedurally defaulted; (2) Grounds 4, 5, 8, 15, 28, and 30 of the petition were dismissed for failure to state a cognizable claim for federal habeas relief; (3) Ground 2 of the petition is unexhausted; and (4) The portion of Ground 6 pertaining to unproduced photographs and videotape is exhausted, but the

---

[2]  The Court notes that Part I, pp. 3-85 of the petition consists of exhibits, including briefs and state court decisions.  (ECF No. 12).

remainder of the Ground 6 (pertaining to Burger Management's change of address, information regarding who authorized the security officers to wear badges, contracts between Burger Management and other entities, and information regarding the credibility of the State's witnesses) is unexhausted. (ECF No. 29). The Court granted petitioner options for handling his unexhausted claims, including the option of returning to state court to exhaust his state-court remedies with respect to certain of his grounds for relief. (*Id.*). On March 10, 2010, petitioner filed a motion to dismiss (abandon) his unexhausted claims and proceed on the remaining claims in the petition. (ECF No. 30). Respondents filed an answer to the remaining grounds of the petition, which includes discussion of Ground 1, a portion of Ground 6, Ground 7, Ground 14, Ground 16 (with subparts), and Ground 27. (ECF No. 31). Petitioner filed a reply. (ECF No. 32). The Court now addresses the merits of the remaining grounds of the petition.

## II. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

1    § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

2    Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

3    a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

4    Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

5    U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

6         A state court decision is an unreasonable application of clearly established Supreme Court

7    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

8    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

9    principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

10   529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more

11   than merely incorrect or erroneous; the state court's application of clearly established federal law

12   must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

13        In determining whether a state court decision is contrary to, or an unreasonable application of

14   federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501

15   U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

16   *denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court

17   shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

18   presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

19   **III.  Discussion**

20        **A.  Ground 1**

21        Petitioner claims that the state trial court lacked jurisdiction over his case. Petitioner argues

22   that the apartment complex at which he was arrested was owned by a federal agency, Housing and

23   Urban Development (HUD). Petitioner argues that the Nevada Supreme Court ignored the "nexus

24   test" under *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961). As the Nevada Supreme

25   Court determined, there was "some nexus" between the federal agency (HUD) and the apartment

26

1    complex, but petitioner failed to show that the apartment complex was under the exclusive

2    jurisdiction of the federal government.  (Exhibit 137, at pp. 2-3; Exhibit 129, at pp. 1-4).  The

3    Nevada Supreme Court examined the record and detailed its findings, concluding that the weight of

4    the evidence supported the State's theory that the security guards at the apartment complex were

5    private security and not federal agents.  (Exhibit 129, at p. 3).  The factual findings of the state court

6    are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving

7    that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

8    clearly established federal law, as determined by the United States Supreme Court, or that the ruling

9    was based on an unreasonable determination of the facts in light of the evidence presented in the

10   state court proceeding.  Habeas relief is denied on Ground 1 of the petition.

11       **B.  Ground 6**

12           In the federal petition, petitioner alleges a violation under *Brady v. Maryland*, 373 U.S. 83

13   (1963).  A similar claim was raised in petitioner's direct appeal, however, on direct appeal, the

14   allegations pertained to unproduced photographs and videotape.  (Exhibit 125, at p. 22).  Ground 6 of

15   the federal petition pertains to unproduced photographs and videotape, but also pertains to many

16   other factual items, including Burger Management's change of address, information regarding who

17   authorized the security officers to wear badges, contracts between Burger Management and other

18   entities, and information regarding the credibility of the State's witnesses.  (ECF No. 12, at pp. 14-

19   15).  As such, in the order filed February 25, 2010, this Court determined that the portion of Ground

20   6 pertaining to unproduced photographs and videotape is exhausted, but the remainder of the Ground

21   6 is not exhausted.  (ECF No. 29, at pp. 8-9).  This Court construes petitioner's document entitled

22   "Motion to Dismiss Unexhausted Claims" (ECF No. 30) as an abandonment of the unexhausted

23   portions of Ground 6.  Therefore, the Court will now review the exhausted portion of Ground 6,

24   namely, the allegation that the State failed to produce photographs and videotape in violation of

25   *Brady v. Maryland*, 373 U.S. 83 (1963).

26

1    The suppression by prosecution of evidence favorable to an accused violates due process

2 where the evidence is material either to guilt or punishment, irrespective of the good faith of the

3 prosecutor. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a *Brady*

4 violation: (1) the evidence at issue must be favorable to the accused either because it is exculpatory

5 or because it is impeaching; (2) the evidence must have been suppressed by the State either willfully

6 or inadvertently; and (3) prejudice must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004);

7 *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Such evidence is material 'if there is a

8 reasonable probability that, had the evidence been disclosed to the defense, the result of the

9 proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. at 280 (quoting *United States*

10 *v. Bagley*, 473 U.S. 667, 682 (1985)). "[T]here is never a real '*Brady* violation' unless the

11 nondisclosure was so serious that there is a reasonable probability that the suppressed evidence

12 would have produced a different verdict." *Strickler v. Greene,* 527 U.S. at 281. A "reasonable

13 probability" is a probability sufficient to undermine confidence in the outcome. *United States v.*

14 *Bagley*, 473 U.S. at 681-82; *see also Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("The question is

15 not whether the defendant would more likely than not have received a different verdict with the

16 evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict

17 worthy of confidence.").

18    In the instant case, petitioner alleges that the State failed to provide him with exculpatory

19 evidence in violation of *Brady*, specifically, photographs and surveillance video taken the night of

20 his arrest that showed that he did not damage the apartment security gate. As he argued in his direct

21 appeal to the Nevada Supreme Court, petitioner argues that this evidence would have shown that the

22 security guards lacked probable cause to detain and search him on suspicion of destroying private

23 property or trespass. The Nevada Supreme Court rejected the Brady claim, as follows:

24           To establish a valid <u>Brady</u> claim, a defendant must show that the
             evidence was favorable to him, the evidence was withheld by the State,
25           and the evidence was material, <u>i.e.</u>, prejudicial. As discussed above,
             the security guards were acting in a private, rather than governmental,

26

1    capacity when they detained and searched Smith.  Thus, even assuming
     that evidence was withheld by the State that showed the guards did not
2    have reasonable suspicion to detain him, it would nevertheless be
     immaterial and could not therefore establish a violation of <u>Brady</u>.
3    Rather, evidence admitted at trial showed that the North Las Vegas
     Police Department had probable cause to arrest Smith on a charge of
4    trafficking in a controlled substance.  We conclude that Smith has not
     established a valid <u>Brady</u> claim and he is not entitled to relief on his
5    basis.

6    (Exhibit 129, at p. 5) (footnotes omitted).

7         This Court notes that the alleged photographs of the undamaged gate would not have been

8    favorable to petitioner, or even relevant, because petitioner was not charged with damaging the gate.

9    As such, any photographs of the gate would not have been relevant to the question of whether or not

10   petitioner possessed a controlled substance, and could not have prejudiced petitioner.  Additionally,

11   trial testimony reveals that, in fact, there was no video of petitioner either possessing drugs or

12   damaging the gate.  (Exhibit 107, at p. 163).  As noted by the Nevada Supreme Court, there was no

13   video of petitioner relevant to this incident.  (Exhibit 137, at p. 9).[3]  Petitioner has failed to

14   demonstrate to this Court that: (1) the alleged photos and videotape were favorable to him either

15   because they were exculpatory or because they were impeaching; (2) the alleged photos and video

16   were suppressed by the State either willfully or inadvertently; and (3) prejudice resulted.  *See Brady*

17   *v. Maryland*, 373 U.S. 83, 87; *Banks v. Dretke*, 540 U.S. 668, 691; *Strickler v. Greene*, 527 U.S. 263,

18   281-82.

19        The Nevada Supreme Court correctly applied the clearly established federal law of *Brady v.*

20   *Maryland*, 373 U.S. 83, 87 (1963) to petitioner's claim.  (Exhibit 129, at p. 5).  The factual findings

21   of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his

22   burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an

23

24        [3]  The Nevada Supreme Court noted that: "Testimony prior to and at trial showed that, although
     there was a surveillance system at the apartment complex, it did not record the conduct that led to his
25   [petitioner's] detention, and could not have recorded the search of appellant by the security guards."
     (Exhibit 137, at p. 9).
26

                                                    9

1    unreasonable application of, clearly established federal law, as determined by the United States

2    Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

3    the evidence presented in the state court proceeding.  This Court denies habeas relief on Ground 6 of

4    the petition.

5         **C. Ground 7**

6         Petitioner contends that the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986) with the

7    use of a peremptory challenge.  Petitioner does not identify the juror at issue, but on direct appeal, he

8    challenged Juror 118's dismissal under *Batson*.  (Exhibit 129, at p. 6).  On direct appeal, petitioner

9    argued that Juror 118 was dismissed for the stated reasons of age and her husband's unemployment.

10   (Exhibit 125, at p. 24).  Petitioner contended that those reasons were false and that the true reason for

11   dismissal was the juror's race.  Petitioner provided no detail to support this claim.  (*Id.*).

12        In *Batson*, the United States Supreme Court forbid prosecutors from purposefully striking

13   prospective jurors solely on account of a juror's race.  *Batson*, 476 U.S. at 86.  The burden is on the

14   defendant to show "purposeful discrimination."  *Id.* at 93.  Once a *prima facia* showing has been

15   made, the prosecutor must prove to the court that race-neutral criteria were the basis for the strike.

16   *Id.* at 94.  The prosecutor's reason for the strike must be a "reason that does not deny equal

17   protection."  *Purkett v. Elem*, 514 U.S. 765, 769 (1995).  The court must then determine if the

18   defendant has "carried his burden of proving purposeful discrimination."  *Hernandez v. New York*,

19   500 U.S. 352, 359 (1991).  The court is not required to make specific findings and need do no more

20   than overrule a defendant's *Batson* objection.  *U.S. v. Gilliam*, 167 F.3d 1273, 1278 (9th Cir. 1999).

21        On habeas review, under the AEDPA, a state court's findings of fact, such as that a

22   prosecutor's reasons or actual motives for challenging a juror were race-neutral, are "presumed

23   correct absent clear and convincing evidence to the contrary."  *Mitleider v. Hall*, 391 F.3d 1039,

24   1050 (9th Cir. 2004); *see also Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (presumption of

25

26

1  correctness must apply to *Batson* determination made by trial court, as its "resolution depends

2  heavily on the trial court's appraisal of witness credibility and demeanor.").

3       On direct appeal, the Nevada Supreme Court rejected petitioner's Batson claim pertaining to

4  Juror 118.  (Exhibit 129, at pp. 6-7.)  The Nevada Supreme Court found that Juror 118 was

5  dismissed because she appeared to be young and her husband was unemployed.  (*Id.*, at p. 6)  The

6  Nevada Supreme Court also found that there were three jurors of petitioner's same race which were

7  seated for the case.  (*Id.*).  These findings are supported by the trial record.  (Exhibit 106, at p. 159).

8  Juror 118 was the youngest on the panel and had an unemployed husband, all of which the

9  prosecutor felt would bias the juror on the issue of drug use.  (*Id.*, at p. 160.)  The trial court noted on

10 the record that the juror at issue did in fact look "pretty young."  (*Id.*, at p. 162.)  The trial court then

11 found there was no pattern of discrimination and that the State's reasons for the dismissal were race

12 neutral, and thus the trial court overruled the *Batson* challenge.  (*Id.*, at p. 162).

13      Petitioner has not shown that the Nevada Supreme Court's rejection of his claim regarding

14 Juror 118 violated *Batson*.  Age and maturity, as evidenced by employment or family relationships,

15 are race-neutral reasons to excuse a juror.  *Jordan v. Lefevre*, 293 F.3d 587, 595 (2nd Cir. 2002).

16 Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or

17 involved an unreasonable application of, clearly established federal law, as determined by the United

18 States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in

19 light of the evidence presented in the state court proceeding.  Habeas relief is denied on Ground 7 of

20 the petition.

21      **D.  Ground 14**

22      Petitioner contends that his trial counsel was ineffective for several reasons, primarily related

23 to the failure investigate.  Petitioner represented himself at trial and had standby counsel.  Prior to

24 that, petitioner had appointed counsel.  Counsel was primarily involved in the early stages of the case

25 and litigated the first motion to suppress filed with the trial court.

26

1    Ineffective assistance of counsel claims are governed by the two-part test announced in

2  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

3  petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

4  attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

5  Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v.*

6  *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

7  ineffectiveness, the defendant must show that counsel's representation fell below an objective

8  standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

9  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

10  would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

11  confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

12  "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

13  order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

14  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

15  *Id.*

16    Ineffective assistance of counsel under *Strickland* requires a showing of deficient

17  performance of counsel resulting in prejudice, "with performance being measured against an

18  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

19  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

20  ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

21  to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

22  5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

23  reasonable professional assistance.  *Id.*

24    The United States Supreme Court has described federal review of a state supreme court's

25  decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

26

1    131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The

2    Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . .

3    through the "deferential lens of § 2254(d).'"  *Id.* at 1403 (internal citations omitted).  Moreover,

4    federal habeas review of an ineffective assistance of counsel claim is limited to the record before the

5    state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.

6          Petitioner's claims of ineffective assistance of trial counsel were raised during the state post-

7    conviction proceedings.  (Exhibit 137, at pp. 6-10).  Each of petitioner's current claims was rejected

8    by the Nevada Supreme Court.  (*Id.*).  First, petitioner contends that trial counsel waited "months"

9    before conducting any investigation.  The Nevada Supreme Court found that this claim did not

10   demonstrate ineffectiveness or prejudice.  (Exhibit 137, at pp. 8-9).  Petitioner failed to indicate what

11   investigation should have been performed, how it would have changed the result of his trial, or how

12   any delay in investigating affected him.  (*Id.*).

13         Petitioner next claims that trial counsel was ineffective for allowing the apartment

14   management company to move without obtaining the new address.  The Nevada Supreme Court

15   noted that petitioner failed to identify what information his counsel could have obtained that would

16   have been helpful prior to the company moving.  (Exhibit 137, at p. 9).

17         Petitioner claims that trial counsel failed to obtain a surveillance video from the incident at

18   the apartment complex.  The Nevada Supreme Court rejected the claim that counsel was ineffective,

19   as the evidence at trial was that no videotape of the incident exhibited.  (Exhibit 137, at p. 9).

20         Petitioner asserts that trial counsel was ineffective for "acting totally unaware" that witnesses

21   should have been called to the suppression hearing.  Petitioner complained of counsel's preparation

22   for the suppression hearing in his state post-conviction petition, although it is not clear what he

23   means by counsel "acting totally unaware" that witnesses should be called.  (Exhibit 130, at p. 32).

24   The Nevada Supreme Court denied relief on petitioner's claims regarding the suppression hearing.

25   (Exhibit 137, at p. 10).  Petitioner has not specified how he was prejudiced, what witnesses should

26

13

1   have been called, or what information they would have provided.  The record reflects that the motion

2   to suppress was based heavily on sworn testimony provided by the security officers at a preliminary

3   hearing, as well as taped statements provided to law enforcement.  (Exhibit 6).  Petitioner has not

4   articulated what additional testimony would have been useful or relevant.

5        Petitioner also asserts that trial counsel was ineffective for failing to recognize the "nexus"

6   between the management company, HUD, and various other law enforcement agencies.  The Nevada

7   Supreme Court rejected this claim, finding that it had already determined on direct appeal that the

8   security officers were not state or federal actors.  (Exhibit 137, at p. 10).

9        The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The

10  Nevada Supreme Court cited to and applied the correct federal standard of *Strickland v. Washington*,

11  466 U.S. 668 (1984).  (Exhibit 137, at p. 8).  Petitioner has failed to meet his burden of proving that

12  the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

13  clearly established federal law, as determined by the United States Supreme Court, or that the ruling

14  was based on an unreasonable determination of the facts in light of the evidence presented in the

15  state court proceeding.  This Court denies habeas relief on Ground 14 of the petition.

16        **E.  Ground 16**

17        In Ground 16, petitioner raises 33 sub-claims alleging the ineffective assistance of appellate

18  counsel.  The *Strickland* standard, as discussed earlier in this order, applies to challenges of effective

19  appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no

20  constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463

21  U.S. 745, 751-54 (1983).  To state a claim of ineffective assistance of appellate counsel, a petitioner

22  must demonstrate: (1) that counsel's performance was deficient in that it fell below an objective

23  standard of reasonableness, and (2) that the resulting prejudice was such that the omitted issue would

24  have a reasonable probability of success on appeal.  *Id.*  The Nevada Supreme Court considered each

25  claim presented in petitioner's federal petition, as discussed below.

26

14

1                     **Sub-claims 1-3**

2         Petitioner claims that appellate counsel was ineffective for failing to raise three issues, which

3 were, in fact, raised on direct appeal.  Appellate counsel was not ineffective for failing to raise those

4 issues, because he did raise them, as noted by the Nevada Supreme Court.  (Exhibit 137, at p. 12).

5 Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he

6 was prejudiced.

7                     **Sub-claim 4**

8         Petitioner claims that appellate counsel did not argue that he was discriminated against by the

9 security officers at the apartment complex.  The Nevada Supreme Court rejected petitioner's claim,

10 as follows:

11         Appellant failed to demonstrate that he was prejudiced.  Regardless of
        whether the EBMC employees discriminated against appellant and

12         Stewart, this court held that the employees were not state actors, thus,
        the alleged violation did not amount to an error that could be addressed

13         on appeal from his judgment of conviction.

14 (Exhibit 137, at pp. 12-13) (footnote omitted).  Petitioner has failed to demonstrate that his appellate

15 counsel would have had a reasonable possibility of success on a claim that he was discriminated

16 against by the security officers.  Petitioner has failed to demonstrate that his appellate counsel's

17 performance was deficient or that he was prejudiced.

18                     **Sub-claim 5**

19         Petitioner claims that appellate counsel did not argue that African Americans are too

20 outnumbered such that the jury pool will never be fair.  Applying clearly-established federal law, the

21 Nevada Supreme Court found that petitioner failed to meet his burden of establishing "either under-

22 representation or systematic exclusion."  (Exhibit 137, at pp. 13-15).  Petitioner has failed to

23 demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim

24 that African Americans are too outnumbered such that the jury pool will never be fair.  Petitioner has

25

26

1  failed to demonstrate that his appellate counsel's performance was deficient or that he was

2  prejudiced.

3        **Sub-claim 6**

4        Petitioner claims that appellate counsel failed to argue that the jury panel was impacted by a

5  juror's statements about his son's death.  The Nevada Supreme Court rejected this claim, noting that

6  the jury was properly instructed that petitioner was presumed innocent and that the jury must hear all

7  evidence before forming an opinion on guilt.  (Exhibit 137, at p. 15).  Petitioner has failed to

8  demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim

9  that the jury panel was impacted by a juror's statements about his son's death.  Petitioner has failed

10  to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

11        **Sub-claim 7**

12        Petitioner claims that appellate counsel should have argued that his presumption of innocence

13  was lost when corrections staff accompanied him to bench conferences.  The Nevada Supreme Court

14  noted that petitioner never objected and in fact consented to the officers accompanying him on prior

15  occasions.  (Exhibit 137, at pp. 15-16).  The Court found no authority which holds that officers

16  accompanying a *pro per* defendant to the bench is unconstitutional.  (Exhibit 137, at p. 16).

17  Petitioner does not allege that he was seen wearing visible restraints, does not allege how security

18  during bench conferences should have been maintained, and does not allege that the officers

19  accompanying him affected the outcome of his trial.  Petitioner has failed to demonstrate that his

20  appellate counsel would have had a reasonable possibility of success on a claim that his presumption

21  of innocence was lost when corrections staff accompanied him to bench conferences.  Petitioner has

22  failed to demonstrate that his appellate counsel's performance was deficient or that he was

23  prejudiced.

24  / / / / / / / / / / /

25  / / / / / / / / / / /

26

### Sub-claim 8

Petitioner asserts that appellate counsel should have raised the issue of the clerk of court losing his filings.  The Nevada Supreme Court found that petitioner failed to show ineffectiveness or prejudice, that the claim was conclusory, and that petitioner was later allowed to file the same pleading.  (Exhibit 137, at p. 17).  Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim regarding filings lost by the clerk of court.  Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

### Sub-claim 9

Petitioner claims that prejudice is presumed anytime an African American person proceeding *pro per* requests a transcript.  The claim made to the Nevada Supreme Court included additional information that the transcripts at issue were not provided and petitioner could not properly prepare for trial.  The federal claim does not include this detail, and is conclusory.  The Nevada Supreme Court found that even the claim presented to it was conclusory, as petitioner failed to identify what transcripts he needed or how his preparation was affected.  (Exhibit 137, at pp. 17-18).  Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim that prejudice is presumed anytime an African American person proceeding *pro per* requests a transcript.  Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

### Sub-claim 10

Petitioner claims that appellate counsel was ineffective for failing to argue sufficiency of the evidence.  The Nevada Supreme Court found that there was sufficient evidence by which a rational trier of fact could find guilt beyond a reasonable doubt for petitioner's conviction.  (Exhibit 137, at pp. 18-19).  The Nevada Supreme Court reached this conclusion by applying clearly established federal law based on *Jackson v. Virginia*, 443 U.S. 307 (1979).  (*Id.*).  Petitioner has failed to

1   demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim

2   challenging the sufficiency of the evidence.  Petitioner has failed to demonstrate that his appellate

3   counsel's performance was deficient or that he was prejudiced.

4        **Sub-claim 11**

5        Petitioner contends that appellate counsel was ineffective for failing to argue that exculpatory

6   photographs were improperly withheld by the State in violation of *Brady*.  Applying clearly

7   established federal authority, the Nevada Supreme Court determined that the photographs of drugs

8   seized from petitioner, if they existed, would not have been favorable to petitioner, and therefore no

9   unconstitutional action occurred.  (Exhibit 137, at pp. 20-21).  Petitioner has failed to demonstrate

10   that his appellate counsel would have had a reasonable possibility of success on a *Brady* violation

11   claim regarding the photographs.  Petitioner has failed to demonstrate that his appellate counsel's

12   performance was deficient or that he was prejudiced.

13        **Sub-claim 12**

14        Petitioner asserts that appellate counsel was ineffective for failing to raise an issue

15   concerning the judge's interruptions during trial.  In state court, petitioner clarified that he

16   specifically referred to interruptions during opening argument.  The Nevada Supreme Court rejected

17   the claim, finding that there were only two interruptions and both were appropriate.  (Exhibit 137, at

18   pp. 21-22).  Petitioner has failed to demonstrate that his appellate counsel would have had a

19   reasonable possibility of success on the issue concerning the judge's interruptions during trial.

20   Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was

21   prejudiced.

22        **Sub-claim 13**

23        Petitioner alleges that appellate counsel was ineffective for not challenging the trial judge's

24   interruptions during cross-examination as being designed to confuse the jury.  The Nevada Supreme

25   Court found that there was an interruption which requested petitioner to re-ask a question, which

26

occurred and then an answer was given, and as such, neither ineffectiveness of counsel nor prejudice was shown. (Exhibit 137, at pp. 22-23). Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim challenging the trial judge's interruptions during cross-examination. Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced.

**Sub-claim 14**

Petitioner alleges that appellate counsel was ineffective for failing to challenge the admission of a work order and four-year-old photographs during trial. The Nevada Supreme Court rejected the claim, reasoning that even if improperly admitted, it was harmless where there was overwhelming evidence of petitioner's guilt. (Exhibit 137, at pp. 23-24). Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim challenging the admission of a work order and photographs during his trial. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 15**

Petitioner claims that appellate counsel was ineffective for failing to argue that the evidence in his case, consisting of drugs, was tainted while in the custody of the North Las Vegas Police Department by being sold. The Nevada Supreme Court noted that evidence at trial substantiated the chain of evidence and petitioner failed to demonstrate that there was any tampering with the evidence. (Exhibit 137, at pp. 25-26). Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim that evidence was tainted while in police custody. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 16**

Petitioner claims that appellate counsel was ineffective for failing to challenge the chemist's testimony at trial as speculative. The Nevada Supreme Court noted that expert witness Carol

1  Crossley was properly qualified as an expert in the testing of controlled substances due to her

2  specialized training and knowledge, as reflected in the trial transcripts.  (Exhibit 137, at pp. 24-25).

3  The Court also noted that petitioner did not object to the expert's certification or testimony during

4  trial.  (*Id.*).  Petitioner was had an opportunity to cross-examine expert witness Crossley but he

5  decided not to ask any questions.  (Exhibit 107, at p. 202).  Petitioner has failed to demonstrate that

6  his appellate counsel would have had a reasonable probability of success on a claim that the district

7  court erred in admitting the expert's testimony.  Petitioner has failed to demonstrate that his appellate

8  counsel's performance was deficient or that he was prejudiced.

9                    **Sub-claim 17**

10         Petitioner contends that appellate counsel was ineffective for failing to challenge statements

11  made by petitioner to security officers or to the North Las Vegas Police Department as being in

12  violation of his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966).  The Nevada

13  Supreme Court noted that at trial, the State did not seek to introduce any statements made by

14  petitioner while he was in the custody of the North Las Vegas Police Department.  (Exhibit 137, at p.

15  26).  The Court further found that while the private security guards testified that petitioner made

16  statements while he was detained, it was previously determined that they were not state actors, and as

17  such, no *Miranda* violation occurred.  (*Id.*, at pp. 26-27).  Petitioner has failed to demonstrate that his

18  appellate counsel would have had a reasonable possibility of success on a *Miranda* challenge.

19  Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he

20  was prejudiced.

21                    **Sub-claim 18**

22         Petitioner asserts that appellate counsel should have argued that he was deprived of a

23  "complete defense" when several witnesses, such as an investigator, were not subpoenaed for trial.

24  The Nevada Supreme Court found that the investigator was not relevant to any issues at trial, as he

25  would only have testified about the status of the security officers and that issue had already been

26

determined in a pretrial motion. (Exhibit 137, at pp. 27-28). Petitioner has not demonstrated that his appellate counsel would have had a reasonable possibility of success on the claim that an investigator was not subpoenaed for trial. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 19**

Petitioner claims that appellate counsel should have raised an issue that the trial judge forced stand-by counsel upon him, which hindered his right to testify on his own behalf. The Nevada Supreme Court found that the trial court did not err by appointing stand-by counsel. (Exhibit 137, at p. 7). The Nevada Supreme Court further ruled that the trial court's warning to petitioner, informing him of the consequences of testifying on his own behalf, did not improperly hinder his ability to testify. (Exhibit 137, at p. 28). Petitioner represented himself at trial and had the ultimate authority to testify if he wanted to do so. Petitioner has not demonstrated that his appellate counsel would have had a reasonable probability of success on a claim that his right to testify on his own behalf was hindered by stand-by counsel or by the trial court. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 20**

Petitioner claims that appellate counsel was ineffective for failing to challenge the entire case based on prosecutorial vindictiveness. The Nevada Supreme Court found there was no prejudice, as the State did not add new charges to the case or increase the severity of existing charges, and the mere fact that multiple prosecutors handled the case did not establish vindictiveness. (Exhibit 137, at pp. 28-29). Petitioner has not demonstrated that his appellate counsel would have had a reasonable probability of success on a claim of prosecutorial vindictiveness. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

/ / / / / / / / / /

/ / / / / / / / / /

**Sub-claim 21**

Petitioner contends that appellate counsel should have argued that "unspecified" persons conspired to deprive him of his rights at trial. The Nevada Supreme Court rejected this claim, as petitioner failed to allege or prove ineffectiveness of counsel or prejudice. (Exhibit 137, at pp. 29-30). Petitioner has not demonstrated that his appellate counsel would have had a reasonable probability of success on a claim that "unspecified" persons conspired to deprive him of a fair trial. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 22**

Petitioner claims that appellate counsel was ineffective for failing to raise a claim of prosecutorial misconduct. In the federal petition, petitioner fails to specify the nature of the alleged prosecutorial misconduct. (ECF No. 12). The Nevada Supreme Court, which was apparently presented with specific incidents of alleged misconduct, ruled that petitioner failed to allege or demonstrate ineffectiveness of counsel or prejudice. (Exhibit 137, at pp. 30-31). Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable probability of success on a claim of prosecutorial misconduct. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 23**

Petitioner contends that appellate counsel should have argued that the trial judge improperly instructed the jury as to several lesser offenses. The Nevada Supreme Court ruled that the jury instructions were correct under Nevada state law. (Exhibit 137, at p. 32). Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim challenging the jury instructions. Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

/ / / / / / / / / /

1

**Sub-claim 24**

2   Petitioner asserts that his appellate counsel failed to argue that he denied his right to present

3 an entrapment defense. The Nevada Supreme Court noted that there was no evidence at trial that

4 petitioner was induced by the government to sell cocaine. (Exhibit 137, at pp. 33-34). Petitioner has

5 failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on

6 a claim that he was denied his right to present an entrapment defense. Petitioner has failed to

7 demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

8

**Sub-claim 25**

9   Petitioner claims that he was prejudiced when he was not provided a trial transcript prior to

10 filing his motion for a new trial. In ruling on this claim, the Nevada Supreme Court noted that

11 petitioner was asked by the trial court which claims he wanted to raise in the motion for new trial

12 which he could not raise without the transcript. (Exhibit 137, at p. 35). Petitioner failed to inform

13 the trial court as to what those claims would be, and his motion for a transcript was denied. (*Id.*).

14 To the extent petitioner claims ineffective assistance of appellate counsel, petitioner has not

15 demonstrated that his appellate counsel would have had a reasonable possibility of success on a

16 claim that he was wrongly denied trial transcripts. Petitioner has failed to demonstrate that his

17 appellate counsel's performance was deficient or that he was prejudiced.

18

**Sub-claim 26**

19   Petitioner claims that he was prejudiced when the trial court ruled on his motion for a new

20 trial without having the full trial transcript. The Nevada Supreme Court ruled that the district court

21 did not err in denying his motion for a new trial. (Exhibit 137, at pp. 35-36). To the extent

22 petitioner claims ineffective assistance of appellate counsel, petitioner has not demonstrated that his

23 appellate counsel would have had a reasonable possibility of success on a claim that the trial court

24 ruled on his motion for a new trial without having the full trial transcript. Petitioner has failed to

25 demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

26

**Sub-claim 27**

Petitioner asserts that he was unable to challenge errors in the pre-sentence report.  The Nevada Supreme Court ruled that petitioner failed to specify what information was incorrect or how corrected information would have affected his sentence, which was valid and within statutory limits. (Exhibit 137, at p. 37-38).  To the extent petitioner claims ineffective assistance of appellate counsel, petitioner has not demonstrated that his appellate counsel would have had a reasonable possibility of success on a claim that he was unable to challenge errors in the pre-sentence report.  Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 28**

Petitioner claims that appellate counsel was ineffective for failing to challenge the "discriminatory" methods used by the trial judge during sentencing.  The Nevada Supreme Court ruled that the sentence imposed was within Nevada statutory limits and it did not impose cruel and unusual punishment.  (Exhibit 137, at p. 38).  Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim that the trial court used discriminatory methods in sentencing.  Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

**Sub-claim 29**

Petitioner claims that appellate counsel should have challenged the performance of stand-by counsel.  The Nevada Supreme Court found that there was no claim of ineffective assistance of counsel appropriate to have been raised on direct appeal.  (Exhibit 137, at pp. 38-39).  Petitioner has failed to demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim challenging the performance of stand-by counsel.  Petitioner has failed to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

/ / / / / / / / / /

24

1          **Sub-claim 30**

2          Petitioner alleges that appellate counsel was ineffective for failing to challenge Justice Mark

3    Gibbons from hearing his direct appeal, because Gibbons had, as a trial judge, overseen petitioner's

4    arraignment.  The Nevada Supreme Court found that petitioner failed to demonstrate deficient

5    performance of counsel or prejudice.  (Exhibit 137, at pp. 39-40).  The Court ruled that petitioner

6    failed to demonstrate that Justice Gibbons harbored an actual or implied bias.  (*Id.*).  "Justice

7    Gibbons' role as judge during appellant's arraignment was limited, did not require any substantive

8    rulings, and did not require disqualification."  (*Id.*, at p. 39).  Petitioner has failed to demonstrate that

9    his appellate counsel would have had a reasonable possibility of success on a claim that Justice

10   Gibbons should have been disqualified from hearing his direct appeal.  Petitioner has failed to

11   demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

12          **Sub-claim 31**

13          Petitioner asserts that his appellate counsel failed to argue that Justice Douglas, then Judge

14   Douglas, was biased or conspired with the prosecution.  The Nevada Supreme Court found that

15   petitioner failed to allege any facts other than the speculative assertion that Justice Douglas was irate

16   with him due to his prior allegations of bias.  (Exhibit 137, at pp. 40-41).  Petitioner has failed to

17   demonstrate that his appellate counsel would have had a reasonable possibility of success on a claim

18   that Justice Douglas was biased or conspired with the prosecution.  Petitioner has failed to

19   demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

20          **Sub-claim 32**

21          Petitioner claims that appellate counsel failed to challenge Judge Leavitt on the ground of

22   bias.  The Nevada Supreme Court ruled that petitioner's claims of bias were not supported by facts.

23   (Exhibit 137, at p. 41).  Petitioner has failed to demonstrate that his appellate counsel would have

24   had a reasonable possibility of success on a claim that Judge Leavitt was biased.  Petitioner has failed

25   to demonstrate that his appellate counsel's performance was deficient or that he was prejudiced.

26

1                    **Sub-claim 33**

2          Petitioner claims that his appellate counsel's errors resulted in cumulative error.  The Nevada

3    Supreme Court ruled that petitioner failed to allege or prove any error, therefore, there was no

4    cumulative error.  (Exhibit 137, at p. 42).

5          To the extent that cumulative error may be grounds for federal habeas relief, the Ninth Circuit

6    has announced that: "[T]he combined effect of multiple trial court errors violates due process where

7    it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th

8    Cir. 2007).  This Court has reviewed the state court record and the pleadings filed by the parties.

9    Petitioner has not demonstrated that cumulative errors occurred, and even assuming errors did occur,

10   that such errors resulted in proceedings that were fundamentally unfair.

11         The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The

12   Nevada Supreme Court cited to and applied the correct federal standards articulated in *Strickland v.*

13   *Washington*, 466 U.S. 668 (1984) and *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  (Exhibit 137,

14   at pp. 8, 12).  The Nevada Supreme Court's rulings as to all 33 sub-claims of Ground 16 have been

15   set forth in this order.  Petitioner has failed to meet his burden of proving that the Nevada Supreme

16   Court's rulings were contrary to, or involved an unreasonable application of, clearly established

17   federal law, as determined by the United States Supreme Court, or that the rulings were based on an

18   unreasonable determination of the facts in light of the evidence presented in the state court

19   proceeding.  This Court denies habeas relief on Ground 16 in its entirety.

20         **F.  Ground 27**

21         Petitioner once again argues that appellate counsel was ineffective due to cumulative error.

22   As discussed earlier in this order, to the extent that cumulative error may be grounds for federal

23   habeas relief, the Ninth Circuit has announced that: "[T]he combined effect of multiple trial court

24   errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *Parle*

25   *v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  This Court has reviewed the state court record and the

26

pleadings filed by the parties.  Petitioner has not demonstrated that cumulative errors occurred, and even assuming errors did occur, that such errors resulted in proceedings that were fundamentally unfair.  Habeas relief is denied as to Ground 27.

**IV.  Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

1      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

2 **APPEALABILITY.**

3      **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

4 **ACCORDINGLY.**

5      Dated this ___23___ day of July, 2012.

6

7                                 _____

                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26